**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEBRA CASE,** | : | **Civil No. 3:16-CV-1782** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CAROLYN W. COLVIN,** | : | |
| **Acting Commissioner of Social** | : | |
| **Security,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

## I.    Introduction

In this Social Security Appeal we are called upon to review three aspects of an Administrative Law Judge's (ALJ) decision denying disability benefits to the plaintiff, Ms. Case.  First, we are invited to consider Ms. Case's assertion that the ALJ failed to recognize that her impairments were so severe that she should have been regarded as *per se* disabled at Step 3 of the five-step analysis that applies in Social Security disability cases.  Second, Ms. Case alleges that the ALJ erred in the weighing and consideration of the medical treatment records and opinion evidence in this case.  Finally, according to Ms. Case the ALJ erred in evaluating her subjective complaints of pain.

1

Having carefully evaluated each of these claims, judging these arguments against the applicable standards of review which govern Social Security appeals, for the reasons set forth below, we conclude that substantial evidence supports each of these findings. We also find that the ALJ has adequately set forth the basis for the conclusions reached on these three questions presented in the instant appeal. Therefore, given the standard of review that applies to Social Security Appeals, we will affirm the decision of the Commissioner in this case.

## II.    Statement of Facts and of the Case

On March 7, 2014, Debra Case applied for Social Security Disability Insurance benefits under Title II of the Social Security Act, alleging that she had experienced an onset of her disability in November of 2011. (Tr. 178-9.) At the time of the alleged onset of disability Case was in her mid-40s, (Tr. 192.), and had a prior employment history as an assembler, packer, personal care assistant, cab driver, and egg packer. (Tr. 196.)

This was Case's second Social Security disability application, a prior application having been denied in September of 2012. (Tr. 122-32.) Thus, while Case alleged that her disability began in November 2011, given this prior unsuccessful application, the relevant period for assessing her ability to work began on September 25, 2012. (Tr. 11, 192.)

According to Case her current claim of disability was based upon a series of aliments including two heart attacks in 2010, neuropathy, fibromyalgia, depression, diabetes, blurred vision, anemia, migraine headaches, poor sleep, and spots on her liver. (Tr. 136-7.) With respect to these medical conditions, the evidence presented to the ALJ was mixed, equivocal, and in some instances supported a finding that Case retained the ability to perform some sedentary work. Thus, with respect to Case's heart condition, the evidence showed that Case experienced heart attacks in May and August 2010. (Tr. 301-03, 400-02.) Following these heart attacks, Case had two stents inserted and was able to return to her work as an egg packer until November of 2011. (Id.) Case also made some lifestyle changes, including cessation of cigarette smoking, which seemed to improve her overall cardiac health. (Tr. 359.) In fact, by the time of her December 2014 administrative hearing before the ALJ, Case denied and cardiac impairment and testified that "my heart is doing pretty good. And that part of my illness seems to be doing okay." (Tr. 55.)

Likewise, with respect to her neuropathy and fibromyalgia, Case's medical history was inconsistent, intermittent, and seemed focused on seeking out disability benefits. For example, in February 2012, at the time of her first disability application, Case began treating with a rheumatologist, Alfred E. Denio III, M.D.,

for fibromyalgia. (Tr. 472-75.) At the outset of this medical relationship, Dr. Denio noted that Case "initially focuse[d] on her efforts to obtain disability;" (Tr. 473.) and reported that Case stated that "[s]he was not laid off because of the discomforts, that the company was downsizing." (Tr. 473.) After examining Case in 2012, Dr. Denio concluded that her symptoms were consistent with diffuse fibromyalgia syndrome, (Tr. 472-73.), but found that Case had 5/5 strength and no limitations in range of motion. (Tr. 475.) Dr. Denio also concluded that Case suffered from diabetes, but described that condition in fairly benign terms, stating that his exam only "suggest[ed] a mild accompanying peripheral neuropathy." (Tr. 473.) Dr. Denio recommended a conservative course of treatment for Case, including exercise, and lifestyle changes. (Id.)

Two years then passed without any further apparent documented treatment or evaluation of Case's condition by Dr. Denio. Then in March of 2014, Dr. Denio once again examined Case after her disability lawyer requested a reevaluation. (Tr. 879.) At that time, Case had normal gait and reflexes, (Tr. 880.), but reported widespread pain and fatigue. (Tr. 879.) Dr. Denio assessed Case as experiencing fibromyalgia, diabetic neuropathy, and depression. (Tr. 880.) The doctor also sought to rule out structural back problems, which could have been the source of functionally limiting musculoskeletal pain. (Tr. 880.) Once again, Dr. Denio

recommended a conservative course of treatment for Case consisting of water therapy and behavioral therapy for her pain. (Tr. 880.) Further tests and examinations confirmed these initial findings. Thus, a March 2014 lumbrosacral spine examination revealed only mild degenerative changes. (Tr. 895.) Case returned to Dr. Denio in August 2014 and reported that therapy had not helped and she stopped going after 5 or 6 sessions. (Tr. 898.) Dr. Denio recommended that Case receive nerve conduction testing and use a cane. (Tr. 899.) Follow-up EMG testing in August 2014 showed that Case was experiencing only "mild chronic right S1" radiculopathy and "mild" peripheral neuropathy. (Tr. 864.) A September 2014 MRI of Case's lumbar spine also revealed only "mild" degenerative changes. (Tr. 920.) Notably, nothing in the administrative record suggests that Dr. Denio has ever found that Case was disabled, or wholly unable to perform even sedentary work. Indeed, Dr. Denio does not appear to have opined on this issue at all during his episodic treatment encounters with Case.

With respect to Case's diabetes and any associated retinopathy or neuropathy, Dr. Denio's findings were consistent with those of Dr. Jill E. Nye, who treated Case's diabetes in 2014. (Tr. 946-79.) In April 2014, Dr. Nye evaluated plaintiff's laboratory results and told her that her diabetes was out of control. (Tr. 964-65.) Dr. Nye also recommended exercise, diet and lifestyle

changes for Case and advised Case that she would need insulin if she could not reduce her blood sugar levels through diet and exercise. (Tr. 965.) However, Case's neuropathy was described by Dr. Nye as "stable," (Tr. 954.), and a March 2014 vision examination revealed "no signs of diabetic retinopathy." (Tr. 813-14.) Once again, nothing in the administrative record suggests that Dr. Nye ever opined that Case was disabled, or wholly unable to perform even sedentary work.

While Case also indicated in her disability application that she has experienced episodes of depression, her treatment records disclose that she has received only periodic care for this condition, and generally has responded well to that care. This care began in December 2012, when Case underwent an initial psychiatric evaluation with Gurdial N. Singh, M.D. (Tr. 486-87.) At that time Case reported that she "broke down two to three weeks ago" after her son moved out and used abusive language with her. (Tr. 486.) On examination, Dr. Singh reported that Case displayed rapid speech, anxiety and depression, but suffered from no thought disorder, and possessed fair judgment and insight. (Tr. 487.) He diagnosed her with major depression, single episode without psychotic features, and an adjustment disorder with depressed mood. (Tr. 487.) Dr. Singh treated Case with anti-depressants, and when Case returned the next month to work through another family issue Dr. Singh reported that she was "minimally anxious"

and was "feeling better about her circumstances at the [sic] this time." (Tr. 488.) In fact, by March 2013, Case was "feeling well, denie[d] any complaints; was eating and sleeping well; had good energy; her mood was controlled; and she had no signs of depression. (Tr. 493.) Dr. Singh further observed that Case "maintain[ed] her interest and pleasure and continue[d] to socialize with others." (Tr. 493.)

In August 2013, Case reported feeling depressed and having problems sleeping. (Tr. 491.) In response, Dr. Singh increased her Wellbutrin and added Ambien. (Id.) Case returned to see Dr. Singh eight months later, in April 2014. (Tr. 825.) At that time Dr. Singh reported that Case had not kept her prior appointment with him, and had become non-compliant with her medication in that she was no longer taking her Wellbutrin. (Tr. 825.) Case reported continued problems with her son and Dr. Singh changed her medication. (Tr. 825.) On examination, plaintiff was cooperative, her speech productive, she felt hurt and depressed, but had no thought disorders or perceptual difficulties. (Tr. 825.) Dr. Singh's final examination of Case took place in June of 2014. (Tr. 848.) At that time the doctor reported that Case was "visibly better" but still complained of depression. (Tr. 848.) Like Case's other treating physicians, there is nothing in

the administrative record which suggests that Dr. Singh ever opined that case's emotional conditions were wholly disabling.

While none of Case's treating sources seem to have opined that she was wholly disabled, there were multiple medical opinions in the administrative record which supported a conclusion that Case could perform a range of sedentary work. For example, On June 13, 2014, Elizabeth Kamenar, M.D., examined plaintiff's records and completed a physical residual functional capacity assessment. (Tr. 142-45.) Dr. Kamenar concluded that plaintiff could perform work at the sedentary level, with exertional, postural, and environmental limitations. (Tr. 143-44.)

These findings were confirmed by a second consultative examining source. On May 30, 2014, consultative examining physician Justine Magurno, M.D., examined Case. (Tr. 8-36.) While Case reported pain every day, coronary artery disease, diabetes, and depression, (Tr. 832.) on examination, her gait was normal, she could heel/toe walk, her reflexes were normal, and she had 5/5 muscle strength. (Tr. 834-35.) She walked without a cane and had a normal stance. (Tr. 834.) Her joints were stable and she had 14 positive trigger points. (Tr. 834.) Case's hand and finger dexterity was intact and she could use a zipper and tie a bow. (Tr. 835.)

As a result of this examination, Dr. Magurno assessed Case's prognosis as fair, (Tr. 835.), and completed a statement concerning Case's ability to do work-related activities, (Tr. 837-43.), which concluded that Case could lift and carry up to 10 pounds continuously. (Tr. 837.) Dr. Magurno also concluded that Case could sit for 2 hours at one time and stand or walk for 30 minutes at a time; that she could sit for a total of 6 hours in an 8-hour day; stand for 2 hours; and walk for 2 hours. (Tr. 838.) Dr. Magurno observed that Case did not require a cane to walk, (Tr. 838.), and opined that she could frequently reach overhead, handle, feel, and push/pull, and could continuously reach and finger with her hands. (Tr. 839.) She could also occasionally operate foot controls. (Tr. 839.) According to Dr. Magurno, Case could not climb ladders or scaffolds or balance; but could occasionally crouch, crawl, and climb stairs and ramps; and could frequently stoop and kneel. (Tr. 840.) Dr. Magurno then opined that Case could perform all activities except walking at a reasonable pace on uneven or rough surfaces. (Tr. 842.)

The administrative record also included one medical source opinion regarding whether Case's emotional impairments prevented her from performing work. Specifically, on April 22, 2014, James Vizza, Psy.D. evaluated Case's record and determined that plaintiff had mild restrictions of activities of daily

living and difficulties maintaining social functioning. (Tr. 141.) Dr. Vizza also concluded that Case had moderate concentration, persistence, or pace limitations and no episodes of decompensation. (Tr. 141, 145-46.) On the basis of these findings, Dr. Vizza opined that Case could "meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment." (Tr. 146.)

It was against this mixed medical record that Case's disability application came to be heard by an ALJ on December 12, 2014. (Tr. 48-71.) At this ALJ hearing, Case and a vocational export appeared and testified. (Id.) Following this hearing, the ALJ issued on decision on January 5, 2015, denying Case's application for disability benefits. (Tr. 8-23.) In this decision, the ALJ followed the familiar five-step sequential process for evaluating disability claims prescribed by the Social security Act. At Step 1, the ALJ determined that Case met the insured status requirements of the Act through December of 2016 and had not engaged in gainful activity since November of 2011. (Tr. 13.) At Step 2 of this process the ALJ found that Case suffered from the following severe impairments which required further assessment: coronary artery disease, diabetes, diabetic neuropathy, fibromyalgia, migraines, obesity, and depression. (Tr. 14.)

While the ALJ found that Case experienced these severe medical conditions, he found that none of Case's aliments were so severely impairing that they constituted *per se* disabling conditions at Step 3 of this sequential analysis. (Tr. 14-16.) In particular, the ALJ concluded that Case's medical history did not demonstrate that all of the criteria for disability based upon diabetes, diabetic neuropathy and fibromyalgia were met in this case. (Tr. 14-15.) Rather, from the medical record before the ALJ these conditions seemed to be subject to treatment and imposed only mild to moderate restrictions upon Case's activities of daily living. (Id.)

The ALJ then undertook a comprehensive review of Case's medical history to determine her residual functional capacity, i.e., her ability to perform some work. (Tr. 17-22.) In the course of this medical review the ALJ observed that Case's treating sources had frequently described her physical impairments as mild, and had prescribed a conservative course of treatment for her. These treatment records also generally did not support claims of wholly disabling physical limitations. Likewise, Case's mental health treatment records disclosed periodic depression which had responded well to treatment. (Id.)

The ALJ also considered the existing medical opinion evidence from consulting examining, and reviewing sources, all of which concluded that Case

could perform gainful activities, and found that these opinions were consistent with the medical record as a whole. (Tr. 20.) Finally, the ALJ assessed Case's subjective complaints of disabling pain and emotional distress. On this score, the ALJ concluded that these subjective complaints were not consistent with the objective medical treatment records, were not congruent with the medical opinion evidence, and were contradicted in part of Case's activities of daily living, which reflected some residual capacity for work and physical activity. (Tr. 19-20.)

On the basis of these findings, the ALJ concluded at Step 4 of this sequential analysis that Case could not perform her past work, but determined that Case retained the residual functional capacity to perform a range of sedentary work. (Tr. 21-23.) Relying upon the testimony of the vocational expert, the ALJ then found that there were substantial jobs in the regional and national economy which Case could perform, and denied her application for disability benefits. (Id.)

After Case exhausted her administrative remedies, this appeal followed. (Doc. 1.) This case is fully briefed by the parties, (Docs. 11 and 14.) and is, therefore, ripe for resolution.

For the reasons set forth below, the decision of the Commissioner will be affirmed.

## III. **Discussion**

In this case we are invited to consider Ms. Case's assertion that the ALJ: (1) failed to recognize that her impairments were so severe that she should have been regarded as *per se* disabled at Step 3 of the five-step analysis that applies in Social Security disability cases; (2) erred in the weighing and consideration of the medical treatment records and opinion evidence in this case; and (3) erred in evaluating her subjective complaints of pain.

Evaluation of these arguments on appeal requires us to apply a deferential standard of review to a series of legal tenets which guide ALJs generally in their evaluation of evidence, and prescribe particular standards for analysis of Step 3 claims of per se disability; evaluation of medical evidence, and assessment of a claimant's subjective complaints. These guiding legal tents, which govern this appeal, are discussed below.

### A. **Substantial Evidence Review – the Role of This Court**

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); Johnson v. Comm'r of

Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before this Court, therefore, is not whether a plaintiff is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417,

2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); <u>Burton v. Schweiker</u>, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); <u>see also</u> <u>Wright v. Sullivan</u>, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); <u>Ficca</u>, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

## B. <u>Initial Burdens of Proof, Persuasion and Articulation for the ALJ</u>

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); <u>see also</u> 20 C.F.R. §416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." <u>Burnett v. Comm'r of Soc. Sec.</u>, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); <u>see also</u> 20 C.F.R. §§416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents

him or her in engaging in any of his or her past relevant work. 42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; <u>Mason</u>, 994 F.2d at 1064.

Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §416.912(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id</u>. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is

relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec</u>., 181 F. 3d 429, 433 (3d Cir. 1999).

### C.     <u>Standard of Review-Step 3 Analysis</u>

As for Step 3 of the disability evaluation process, at this step in the sequential analysis the ALJ must determine whether a claimant's alleged impairment is equivalent to a number of listed impairments that are acknowledged as so severe as to preclude substantial gainful activity.  20 C.F.R. §416.920(a) (4) (iii); 20 C.F.R. pt. 404, subpt. P, App. 1; <u>Burnett,</u> 220 F.3d 112, 119.  In making this determination, the ALJ is guided by several basic principles set forth by the social security regulations, and case law.  First, if a claimant's impairment meets or equals one of the listed impairments, the claimant is considered disabled *per se,* and is awarded benefits.   20 C.F.R. §416.920(d); <u>Burnett,</u> 220 F.3d at 119. However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, the plaintiff bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment."   <u>Sullivan v. Zebley,</u> 493 U.S. 521, 531 (1990); 20 C.F.R. §416.920(d).  An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient.  <u>Id</u>.

In sum, a claimant bears the burden of proving complete congruence with all of the requirements of a listing before that claimant can prevail at Step 3 of this sequential analysis.

### D. Legal Benchmarks for the ALJ'S Assessment of a Claimant's Credibility

Further, an ALJ's findings based on the credibility of a claimant are to be accorded great weight and deference, since an ALJ is charged with the duty of observing a witness' demeanor and credibility. Frazier v. Apfel, No. 99–CV–715, 2000 WL 288246, at *9 (E.D.Pa. Mar. 7, 2000) (quoting Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531(6th Cir.1997)). In making a finding about the credibility of a claimant's statements, the ALJ need not totally accept or totally reject the individual's statements. SSR 96–7p. The ALJ may find all, some, or none of the claimant's allegations to be credible, or may find a claimant's statements about the extent of his or her functional limitations to be credible but not to the degree alleged. Id.

In the same fashion that medical opinion evidence is evaluated, the Social Security Rulings and Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529; SSR 96–7p. First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an

19

underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 404.1529(b); SSR 96–7p. During the second step of this credibility assessment, the ALJ must determine whether the claimant's statements about the intensity, persistence or functionally limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c); SSR 96–7p. This includes, but is not limited to: medical signs and laboratory findings, diagnosis and other medical opinions provided by treating or examining sources, and other medical sources, as well as information concerning the claimant's symptoms and how they affect his or her ability to work. Id. The Social Security Administration has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 96–7p.

Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms. 20 C.F.R. § § 404.1529(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the

claimant's symptoms; precipitating and aggravating factors; the type dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. Id. See George v. Colvin, No. 4:13–CV–2803, 2014 WL 5449706, at *4 (M.D.Pa. Oct. 24, 2014); Martinez v. Colvin, No. 3:14-CV-1090, 2015 WL 5781202, at *8–9 (M.D. Pa. Sept. 30, 2015).

### E. Legal Benchmarks for the ALJ's Assessment of Medical Treatment and Opinion Evidence

The Commissioner's regulations also set standards for the evaluation of medical evidence, and define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions. 20 C.F.R. §404.1527(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. §404.1527(c).

In deciding what weight to accord to competing medical opinions and evidence, the ALJ is guided by factors outlined in 20 C.F.R. §404.1527(c). "The

regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and, therefore, their opinions generally entitled to more weight. See 20 C.F.R. §404.1527(c)(2)("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. §404.1502 (defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. §§04.1527(c)(2); see also SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's

opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. §404.1527(c).

At the initial level of administrative review, State agency medical and psychological consultants may act as adjudicators. See SSR 96-5p, 1996 WL 374183 at *4. As such, they do not express opinions; they make findings of fact that become part of the determination. Id. However, 20 C.F.R. §404.1527(e) provides that at the ALJ and Appeals Council levels of the administrative review process, findings by nonexamining State agency medical and psychological consultants should be evaluated as medical opinion evidence. As such, ALJs must consider these opinions as expert opinion evidence by nonexamining physicians and must address these opinions in their decisions. SSR 96-5p, 1996 WL 374183 at *6. Opinions by State agency consultants can be given weight "only insofar as they are supported by evidence in the case record." SSR 96-6p, 1996 WL 374180 at *2. In appropriate circumstances, opinions from nonexamining State agency medical consultants may be entitled to greater weight than the opinions of treating or examining sources. Id. at *3.

Furthermore, as discussed above, it is beyond dispute that, in a social security disability case, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704.

This principle applies with particular force to the opinions and treating records of various medical sources. As to these medical opinions and records: "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)(quoting Mason, 994 F.2d at 1066)); see also Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).

Oftentimes, as in this case, an ALJ must evaluate medical opinions and records tendered by both treating and non-treating sources. Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, "[w]here, . . . , the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

In making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D.Pa. Mar. 23, 2015); Turner v. Colvin, 964 F.Supp.2d 21, 29 (D.D.C.2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D.Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

It is equally clear, however, that an ALJ may not unilaterally reject *all* medical opinions in favor of the ALJ's own subjective impressions. Durden v. Colvin, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016) citing Thanh Tam Vo v. Colvin, No. 1:14–CV–00541–GBC, 2015 WL 5514981, at *4 (M.D.Pa. Sept. 15, 2015) (remanding where ALJ completely rejected all medical opinions, even the one that supported the ALJ's RFC). Thus,

> In a slew of decisions, the Third Circuit holds that no reasonable mind would find the ALJ's evidence to be adequate when the ALJ rejects every medical opinion in the record with only lay reinterpretation of medical evidence. See Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988); Doak v. Heckler, 790 F.2d 26, 29–30 (3d Cir.1986); Ferguson v. Schweiker, 765 F.2d 31, 37, 36–37 (3d Cir.1985); Kent v. Schweiker, 710 F.2d 110, 115 (3d Cir.1983); Van Horn v. Schweiker, 717 F.2d 871, 874 (3d Cir.1983); Kelly v. R.R. Ret. Bd., 625 F.2d

486, 494 (3d Cir.1980); <u>Rossi v. Califano</u>, 602 F.2d 55, 58–59, (3d Cir.1979); <u>Fowler v. Califano</u>, 596 F.2d 600, 603 (3d Cir.1979); <u>Gober v. Matthews</u>, 574 F.2d 772, 777 (3d Cir.1978). These cases also recognize the special deference owed to medical opinions from treating sources ("treating source rule")

<u>Burns v. Colvin</u>, 156 F. Supp. 3d 579, 583 (M.D. Pa. 2016).

In short, "rarely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant. <u>See</u> <u>Doak v. Heckler</u>, 790 F.2d 26, 29 (3d Cir.1986) ('No physician suggested that the activity Doak could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence.')." <u>Ennis v. Astrue</u>, No. 4:11-CV-01788, 2013 WL 74375, at *6 (M.D. Pa. Jan. 4, 2013) (Munley, J.)

## F. <u>Substantial Evidence Support's the ALJ's Findings in this Case</u>

In this case, Debra Case launches a threefold attack upon the ALJ's decision finding that she was not wholly disabled. First, Case argues that the ALJ failed to recognize that her impairments were so severe that she should have been regarded as *per se* disabled at Step 3 of the five-step analysis that applies in Social Security Disability cases. Second, Ms. Case alleges that the ALJ erred in the weighing and consideration of the medical treatment records and opinion evidence in this case.

Finally, according to Ms. Case the ALJ erred in evaluating her subjective complaints of pain.

Our review of this decision is limited to determining whether the findings of the ALJ are supported by substantial evidence in the record. See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D.Pa. 2012). In this context, substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" Pierce v. Underwood, 487 U.S. 552, 565 (1988), and substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971).

Guided by this deferential standard of review, we also recognize that, when weighing medical evidence, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). Therefore, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707.

In the instant case, the thorough opinion of the ALJ meets all of the benchmarks prescribed by law. Turning first to the question of whether the ALJ erred in concluding that Case's medical conditions were not *per se* disabling at Step 3 of this sequential analysis, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, the plaintiff bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990); 20 C.F.R. §416.920(d). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. Id.

In this case, the ALJ correctly concluded that all of the listing criteria for Case's diabetes, neuropathy and fibromyalgia were not satisfied. Quite the contrary, the medical records before the ALJ presented a very equivocal picture of Case's health, describing any neuropathy as mild, and determining that Case's fibromyalgia did not severely restrict her physical activities, mobility and strength. These conclusions drew ample support from Case's own treatment records, and illustrated that none of her medical conditions had reached the level of a *per se* disabling impairment, since in no instance did the evidence sustain a finding that all of the pertinent listing requirements were met.

The ALJ's overall assessment of the medical evidence in this case also drew upon substantial evidence in the administrative record. On this score, the ALJ noted that treating source records described Case's medical condition in terms which fell well below any wholly disabling level of impairment. Further, none of the treating sources seemed to have clearly opined that Case was disabled due to these conditions. In contrast, three medical opinions from consulting, examining, and reviewing sources concluded that Case's physical and emotional conditions were not wholly disabling, and that she retained the ability to perform some sedentary work.

Our independent review of the ALJ's careful treatment of this medical evidence, and that underlying medical records themselves, discloses that the medical findings made by the ALJ were each supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). As such, each of these findings was sustained by substantial evidence which was fully articulated by the ALJ in the decision that was rendered in this case. We also conclude that the ALJ's decision, read as a whole, provided a complete analysis of this medical evidence, and that there was no impermissible selectivity or "cherry picking" in the ALJ's treatment

of this evidence. Therefore, under the deferential standard of review which guides our consideration of this case, we must affirm these findings.

Finally, notwithstanding Case's claims to the contrary, we conclude that the ALJ gave adequate consideration to her subjective complaints of disabling pain and impairment. Social Security Rulings and Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529; SSR 96–7p. First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 404.1529(b); SSR 96–7p. During this credibility assessment, the ALJ must determine whether the claimant's statements about the intensity, persistence or functionally limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c); SSR 96–7p. This includes, but is not limited to: medical signs and laboratory findings, diagnosis and other medical opinions provided by treating or examining sources, and other medical sources, as well as information concerning the claimant's symptoms and how they affect his or her ability to work. Id. Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations

identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms. 20 C.F.R. § § 404.1529(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. Id. See George v. Colvin, No. 4:13–CV–2803, 2014 WL 5449706, at *4 (M.D.Pa. Oct. 24, 2014); Martinez v. Colvin, No. 3:14-CV-1090, 2015 WL 5781202, at *8–9 (M.D. Pa. Sept. 30, 2015).

Here, the ALJ's decision denying benefits to Case faithfully followed this method of analysis prescribed by agency rules and regulations. In conducting this review, the ALJ noted that Case's subjective complaints of disabling impairment were not entirely congruent with objective medical records, which generally shown only mild to moderate restrictions on Case's ability to engage in physical activity. These medical records, in turn, were consistent with Case's reported activities of daily living, which seemed to confirm an ability to perform at least sedentary work.

31

Given that objective medical data and Case's own reported activities of daily living both suggested that Case retained the ability to perform some sedentary work, we find that the ALJ correctly concluded that Case's subjective complaints were not fully supported in the administrative record, and partially discounted those complaints.

## IV.    Conclusion

Given the deferential standard of review which applies to appeals of Social Security Disability determinations, our finding that substantial evidence supported the ALJ's decision and that the basis for this decision was fully articulated by the ALJ, now calls for the affirmance of this decision.   Therefore, we affirm this decision, direct that judgment be entered in favor of the defendant, and instruct the clerk to close this case.

An appropriate order follows.

Submitted this 7th day of August, 2017.

*s/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge